SADIE BURGIN, *Appellee*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 18,128.

### SYLLABUS BY THE COURT.

1. MINING ACT—*Not an Adoption of Pennsylvania Statutes—Decisions of that State Not Controlling.* While the statute enacted to protect the health and safety of mine workers embodies subjects covered by the mining act of the state of Pennsylvania, such act was not adopted as the law of Kansas, and the decisions of the supreme court of Pennsylvania interpreting it are persuasive only and not controlling.

2. ——— *Mining Statute—Constitutional—Assumption of Risk —Contributory Negligence.* The statute referred to is not unconstitutional as discriminating against mine owners and operators because it abolishes the defenses of assumption of risk and contributory negligence in certain actions which it authorizes.

Burgin v. Railway Co.

3. —— *Mining Statute a Valid Exercise of Police Power.* The statute referred to is the result of a valid exercise of the police power of the state, and is not in contravention of the provisions of the constitution of the United States or the amendments thereto.

4. —— *Negligence—Violation of Mining Act.* The decision in the case of *Cheek v. Railway Co.*, 89 Kan. 247, 131 Pac. 617, approved and followed.

Appeal from Cherokee district court. Opinion filed July 5, 1913. Affirmed.

*John Madden, W. W. Brown,* both of Parsons, and *Al. F. Williams,* of Columbus, for the appellant.

*C. A. McNeill, E. V. McNeill,* both of Columbus, and *William H. Lucas,* of Mineral, for the appellee.

The opinion of the court was delivered by

BURCH, J.: This case is a companion of that of *Cheek v. Railway Co.*, 89 Kan. 247, 131 Pac. 617. The plaintiff is the widow of John Burgin who was a shot firer in the defendant's coal mine No. 16, and who was killed by an explosion of fire damp under the circumstances related in the opinion in the Cheek case. In this case the jury rested liability on the fact that the defendant willfully failed to maintain bore holes in advance of the work, as the statute required, when approaching and in dangerous proximity to abandoned mine No. 7, which the defendant's superintendent and mine foreman suspected of containing inflammable gases.

The facts are reargued to this court as they were in the Cheek case, but the verdict and the special findings of the essential facts upon which liability depends are abundantly sustained by the evidence. No trial errors were committed which prejudicially affected the defendant's substantial rights, and the motion for a new trial was properly denied. The proceedings were so nearly like those in the former case that a discussion

of them in detail is unnecessary. Some observations upon the law of the case additional to those contained in the opinion in the Cheek case may be pertinent in view of certain arguments contained in the defendant's brief.

The declaration in the Cheek case that the courts may take judicial knowledge of the fact that abandoned coal mines in Kansas generate inflammable gases and of the fact that such as do so, may accumulate such gases was made in response to a specific contention of the defendant, who went so far as to claim that such things were without precedent. The trial court listened to considerable evidence on the subject although the legislature had felt called upon to enact a highly penal statute for the protection of mine workers based upon the existence of such facts. Hereafter should occasion arise judicial notice may be taken of them. As pointed out in the former opinion, however, one mine may be no criterion by which to judge of another, and the question whether a particular mine was suspected of containing inflammable gas must always be determined as a question of fact from all the circumstances and conditions which may be found to exist.

Many features of coal mining operations will necessarily be identical wherever such operations are conducted, and the legislatures of different states when dealing with the same subjects are likely to prescribe identical regulations. The statute of this state embraces some of the matters covered by the mining act of the state of Pennsylvania, but the Pennsylvania statute was not adopted as the law of Kansas and the decisions of the supreme court of Pennsylvania interpreting that statute are persuasive only and not controlling.

The defendant refers to the case of *K. C. Ft. S. & G. Rld. Co. v. McHenry*, 24 Kan. 501, in which it was said that a statute would be unconstitutional as discriminating against railroads if they were liable in every case

of negligence, however slight, even though the plaintiff's negligence contributed equally or more to the injury. The mining statute does not make the mine owner or operator liable in every case of negligence however slight although the employee's negligence contributed equally or more to his injury. Indeed the mine owner or operator is not made liable for negligence in the proper sense of the term at all. He. is liable only for willful misconduct consisting of the intentional doing of something prohibited or intentional inaction when. specific action is required. The statute relates to an extrahazardous employment. The requirement respecting bore holes applies only when danger is suspected as being imminent, and under the common-law rules the willful. refusal to take those precautions which duty imposes when in the face of threatened danger amounts to wantonness, to which assumption of risk and contributory negligence are not defenses. This court has not held that either the factory act or the mining act will allow a plaintiff to recover when his own conduct amounts to a willful, reckless or wanton disregard of conditions and of consequences to himself. There is no evidence whatever which the court would have been authorized to submit to the jury that either Cheek or Burgin was guilty of such conduct and consequently the question is not directly before the court for decision, but since the scope and meaning of the statute are involved it is not quite dictum to say that the court would not so hold. The result is that the classification made by the statute is abundantly justified and the McHenry case is not in conflict with either *Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657, or with the Cheek case (89 Kan. 247, 131 Pac. 617).

In this connection it may be observed that there need be no necessary inconsistency between a decision rendered thirty or fifty years ago holding that assumption

of risk and contributory negligence in a given employment are defenses to an ordinary action by a servant against his master, based on the latter's negligence, and a decision to the contrary at the present time. The doctrines of assumption of risk and contributory negligence are not the creatures of any constitution or of any legislative enactment. They are court-made rules, invented to meet certain ideals of justice respecting certain social and economic conditions and relations. Should the conditions and relations be completely changed, and those ideals wholly fail of realization, the reason for the rules, which is the life of all rules of the common law, would then be wanting and the court which would go on enforcing them would be a conscious minister of injustice and not of justice. It is not always easy to say just when a rule of the common law completely fails to accomplish the purpose of its adoption, but in the present instance the legislature has intervened. It has given an injured mine worker a right of action against his employer conditioned upon the existence of certain specified elements, and the court has no power to change those conditions by the specification of exceptions such as assumption of risk and contributory negligence.

Sufficient reasons for the constitutionality of the statute as an exercise of the police power of the state were given in the opinion in the Cheek case. The supposed delinquency of the shot firers who met death on March 18, 1911, consisted in going into the mine and performing their ordinary duties in the usual way although the defendant had willfully failed to keep bore holes in advance of the work when in dangerous proximity to an abandoned mine suspected of containing inflammable gases. As already observed, mining is a hazardous employment and the occupation of a shot firer is the most hazardous of all. The legislature understood the general character, habits, customs, and

conduct of the men who find their livelihood by daily toil in the bowels of the earth and understood perfectly well the pressure which constrains them to keep on until the uncertain and shadowy boundary which marks the limit of ordinary prudence is sometimes overlooked and passed. The burning, crushing, mangling, and entombment of such men, singly and in groups, and the long trains of consequences which follow in the wake of such events, can be largely prevented if certain precautions be taken, such as inspections for inflammable gases and the boring of test holes in advance of the working places. It is within the power of the mine owner to adopt and enforce protective regulations of this character, while the driller and shot firer and others whose safety is at stake can not do so. Consequently the legislature has taken away from the mine owner or operator the defenses of assumption of risk and contributory negligence and obliges him to employ workmen at his own risk and not at their risk if he willfully disobeys the command of the statute. Because of the willful nature of the transgression a double sanction is provided consisting of an action for pecuniary damages resulting from injury to persons or property, and a prosecution for a misdemeanor. The constitution of this state permits such legislation, and in the opinion of this court the constitution of the United States does not prohibit it.

The judgment of the district court is affirmed.